UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHELLY MAYDEN, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CAUSE NO. 2:07-CV-311 RM ) |
| SUPERIOR AMBULANCE SERVICE, INC., | ) ) ) ) |
| Defendant | ) |

OPINION and ORDER

This cause is before the court on the motion of Superior Air-Ground Ambulance Service, Inc. for summary judgment on Shelly Mayden's claims that she was paid less than male co-workers because of her gender in violation of the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*[1] Ms. Mayden filed her response, and Superior its reply. The court heard oral argument on Superior's motion on June 17, 2009. For the reasons that follow, the court grants Superior's motion for summary judgment on all claims other than Ms. Mayden's Equal Pay Act claim with respect to Michael Samelson.

I. FACTS

---
[1] Ms. Mayden's complaint also contained a claim for constructive discharge, but she informed the court at the hearing that the claim is withdrawn.

Shelly Mayden became a licensed emergency medical technician (EMT) in 1996 and worked for two years for Consolidated Medical Transport (Co-Med) as an EMT and for two more years as a combination EMT and dispatcher. Superior purchased Co-Med in December 2000 and Ms. Mayden began working for Superior in January 2001. At that time, Superior was based in the Chicago area and didn't have an Indiana facility. Ms. Mayden helped Superior establish a Griffith, Indiana office and ran EMT calls for the company through the spring of 2001, when Superior moved its operations to Highland, Indiana, and Ms. Mayden began dispatching ambulances on the midnight shift.

In 2003, Ms. Mayden began working days as a wheelchair van dispatcher and filled in dispatching ambulances on weekends and holidays. Ms. Mayden also became Superior's community relations liaison and took on various projects, which, she says, took very little of her time. Ms. Mayden says she spent 2% of her working time at Superior running EMT calls, 2% of her working time doing community relations work, and the rest of her time working as a dispatcher.

Ms. Mayden contends there are very few distinctions between dispatching ambulances and dispatching wheelchair vans. Ms. Mayden explains that even though wheelchair van pick-ups generally involve pre-scheduled appointments, her days spent dispatching wheelchair vans were "nuts" due to the high volume of runs and the low number of drivers. According to Ms. Mayden, the process for dispatching wheelchair vans and ambulances is the same: when calls come into the center, assessments are made as to whether an ambulance or wheelchair van

2

should be dispatched and what types of additional equipment might be needed; the dispatcher then routes the emergency vehicles and tracks their status and at the end of the shift fills out the proper paperwork. Ms. Mayden says all dispatchers should be familiar with the geographical area where they work, have knowledge of basic medical terminology and conditions, have prior dispatching experience, and have the ability to provide good customer service, multi-task, and handle stress. She says she possessed all those qualities, got good performance reviews, and received compliments and commendations for her extra efforts on special projects. Ms. Mayden was chosen as an employee of the month in 2004.

Ms. Mayden reports that her starting pay with Superior in 2001 was $10.50 per hour. She says she received raises over the years and was earning $13.94 per hour in 2006. Ms. Mayden resigned from Superior in August 2006 because she was being paid less than fellow dispatcher Jonathan Burchett, who was earning $21.36 per hour. Ms. Mayden claims Mr. Burchett received preferential treatment because he was the owner's "golden boy," and Mr. Burchett earned more money than she did because she is a woman. Ms. Mayden believed in 2006 that she should have been paid as much as Joe Salas, as well, but she has withdrawn her claim as to Mr. Salas. *See* Resp., at 12 ("Although she feels she should have made the same amount as Burchett, Mayden agrees that another dispatcher, Jose (a/k/a Joe) Salas, whose experience included time as a dispatch supervisor, should have been paid more."). Instead, Ms. Mayden replaced Mr. Salas with a new comparator in her summary judgment response: she now claims she should

3

have received the same rate of pay as her replacement, Michael Samelson, who, when he replaced Ms. Mayden in 2006, made $22.80 an hour.[2]

Ms. Mayden filed a complaint with the EEOC in March 2007, alleging that Superior paid male dispatchers more than her "because of [her] sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act." She filed suit in this court in September 2007, seeking compensatory, liquidated, and punitive damages, front and back pay, costs, and attorney fees.

Superior claims entitlement to summary judgment because Ms. Mayden can't demonstrate that the company violated the Equal Pay Act and can't establish a prima facie case of sex discrimination under Title VII. Superior argues, too, that to the extent Ms. Mayden was paid less than the male employees to whom she compares herself, the company's pay scale is based on non-prohibited criteria and so amounts to a legitimate, non-discriminatory reason for its actions.

II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In

---

[2] Superior has moved to strike Ms. Mayden's arguments relating to Mr. Samelson, arguing that she can't now introduce Mr. Samelson as a comparator because he wasn't named or identified by Ms. Mayden as a comparator at any time before she filed her summary judgment response. Superior has addressed Mr. Samelson's employment with the company in its reply brief (and at oral argument), so the court will consider Ms. Mayden's use of Mr. Samelson as a comparator.

4

deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).

### III. DISCUSSION

The Equal Pay Act, an amendment to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, forbids employers from paying workers of one sex less than workers of the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where the differential is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures quantity or quality of production; or (iv) a differential based on any factor other than sex." 29

5

U.S.C. § 206(d)(1). To establish a prima facie case under the Equal Pay Act, Ms. Mayden must show that (1) different wages were paid to employees of the opposite sex, (2) the employees do equal work that requires equal skill, effort, and responsibility, and (3) the employees have similar working conditions. Wollenburg v. Comtech Mfg. Co., 201 F.3d 973, 975 (7th Cir. 2000). "In determining whether two jobs are equal, the crucial inquiry is 'whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical.' Once [Ms. Mayden] establishes a common core, the court must ask whether any additional tasks make the jobs 'substantially different.'" Cullen v. Indiana Univ. Bd. of Trustees, 338 F.3d 693, 698 (7th Cir. 2003) (*quoting* Fallon v. Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989)); *see also* Markel v. Board of Regents of Univ. of Wisconsin Sys., 276 F.3d 906, 913 (7th Cir. 2002) ("The plaintiff would have to show that the jobs compared are substantially equal, based upon actual job performance and content – not job titles, classifications or descriptions." (internal quotations and citations omitted)); Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 923 (7th Cir. 2000) ("Opinions commonly use the formula "substantially equal" to express the idea that trivial differences do not matter."). "No proof of discriminatory intent is required." Warren v. Solo Cup Co., 516 F.3d 627, 629 (7th Cir. 2008).

If Ms. Mayden establishes a prima facie case, Superior may respond with affirmative defenses to show that the pay differential is due to a seniority system, a merit system, a system that measures earnings by quantity or quality of

6

production, or any factor other than sex. Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 793-794 (7th Cir. 2007). If Superior shows such a reason by a preponderance of the evidence, Ms. Mayden then must show that the stated reason is a pretext for a decision that was based on prohibited criteria. "Proof that the actual reason disserves the employer's interests does not discharge that burden, as long as the employer does not rely on one of the forbidden grounds." Wernsing v. Illinois Dep't of Human Servs., 427 F.3d 466, 469 (7th Cir. 2005). The Equal Pay Act doesn't authorize courts "to set their own standards of 'acceptable' business practices. The statute asks whether the employer has a reason other than sex – not whether it has a 'good' reason." Wernsing v. Illinois Dep't of Human Servs., 427 F.3d at 468; see also Warren v. Solo Cup Co., 516 F.3d 627, 630 (7th Cir. 2008) ("The justification need not be a 'good reason,' but merely a gender-neutral one.").

Ms. Mayden claims Superior paid her less than its male dispatchers based on her gender and contends her pay should have been the same as that of Jonathan Burchett, a co-employee at Superior, and Michael Samelson, who replaced her when she resigned from Superior. The parties agree that those three employees received different wages (at the time Ms. Mayden quit in 2006, her pay was $13.94 per hour, Mr. Burchett's pay was $21.00 per hour, and Mr. Samelson received $22.80 per hour) and they had similar working conditions (they all worked on computers located at Superior's Indiana facility), but the parties

dispute Ms. Mayden's claim that she, Mr. Burchett, and Mr. Samelson did equal work that required equal skill, effort, and responsibility.

Ms. Mayden also brings a gender discrimination claim under Title VII based on the disparity between her pay and Mr. Burchett's pay. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case on her claim that Superior paid her a lower wage because of her gender in violation of Title VII, Ms. Mayden proceeds under the indirect method of proof, which requires her to demonstrate that she (1) is a member of a protected class; (2) was performing her job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated male employees. Warren v. Solo Cup Co., 516 F.3d 627, 630 (7th Cir. 2008). "Moreover, [Ms. Mayden] must prove the intent to discriminate, specifically the 'actual desire to pay women less than men because they are women.'" Cullen v. Indiana Univ. Bd. of Trustees, 338 F.3d 693, 704 n.8 (7th Cir. 2003) (*quoting* Loyd v. Phillips Bros., Inc., 25 F.3d 518, 525 (7th Cir. 1994)). Summary judgment for Superior is appropriate if Ms. Mayden is unable to establish any of the elements of a prima facie case. Atanus v. Perry, 520 F.3d 662, 673 (7th Cir. 2008).

If Ms. Mayden establishes a prima facie case, the burden shifts to Superior to proffer a legitimate, nondiscriminatory reason for the pay disparity, and if Superior provides a legitimate reason, the burden shifts back to Ms. Mayden to

8

demonstrate that the proffered reason is "false and only a pretext for discrimination." Atanus v. Perry, 520 F.3d 662, 672 (7th Cir. 2008). Ms. Mayden can avoid summary judgment by "creat[ing] a triable issue of whether the adverse employment action of which [s]he complains had a discriminatory motivation." Rudin v. Lincoln Land Community Coll., 420 F.3d 712, 721 (7th Cir. 2005) (*quoting* Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir. 1997)).

*A. Mr. Burchett*

Ms. Mayden and Mr. Burchett did not do equal work requiring equal skill, effort, and responsibility under similar working conditions. Three of every four wheelchair van calls are prescheduled, while only fifty-five to sixty percent of ambulance calls are prescheduled. When Mr. Burchett receives a non-emergency, as-soon-as-possible call for an ambulance, he must get the ambulance there within thirty minutes; in response to a similar call for a wheelchair van, Ms. Mayden has sixty minutes to get the van there. Ambulance dispatcher Burchett has twenty to twenty-van vehicles under dispatch at a given moment; wheelchair van dispatcher Mayden has six. An ambulance dispatcher such as Mr. Burchett averages ninety dispatches per shift; a wheelchair van dispatcher like Ms. Mayden averages between sixty and seventy. Wheelchair vans can carry as many as five patients, while ambulances can carry only one. Ambulance dispatches must divert ambulances to the nearest facility if an emergency arises during transport;

9

wheelchair van dispatchers call for an ambulance if an emergency arises during a van transport.

Ambulance dispatchers like Mr. Burchett have triage duties — medical necessity, call priorities — that wheelchair van dispatchers don't have. Ambulance dispatchers also must make equipment decisions not required of wheelchair van dispatchers, such as whether the transport requires a ventilator, a cardiac monitor, an oxygen saturation monitor, an advanced life support vehicle, a basic life support vehicle, or a bariatric ambulance.

Ms. Mayden's wheelchair van dispatch job and Mr. Burchett's ambulance dispatch job simply are not equal work requiring equal skill, effort, and responsibility under similar working conditions. Superior is entitled to judgment as a matter of law on Ms. Mayden's Equal Pay Act claim based on Mr. Burchett's pay.

Turning to Ms. Mayden's Title VII claim based on Mr. Burchett's pay, the parties don't dispute that as a female, Ms. Mayden is a member of a protected class, that she was performing her job satisfactorily, or that she was paid less than Mr. Burchett. Superior argues Ms. Mayden can't prevail because she can't identify a similarly-situated male employee or establish that a similarly-situated male was treated more favorably. Individuals are similarly-situated if they are "directly comparable . . . in all material respects." Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). Factors for the court to consider in making the comparison include whether the employees held the same job

description, reported to the same supervisor, were subject to the same standards, and "had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision." Ajayi v. Aramark Business Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003).

Superior asserts that Mr. Burchett isn't similarly-situated because (1) Mr. Burchett had many more years of dispatching experience than Ms. Mayden: in January 2001 (when Superior first hired Ms. Mayden), Ms. Mayden had two years dispatching experience; Mr. Burchett (whom Superior hired in 1996) had twenty-one years dispatching experience; (2) Mr. Burchett had experience dispatching in Illinois where there are more ambulances and stations than in Indiana, the only state in which Ms. Mayden had worked; (3) unlike Ms. Mayden, Mr. Burchett had a college degree; and (4) Mr. Burchett held an Emergency Medical Dispatcher licenses, while Ms. Mayden didn't.

Ms. Mayden hangs her hat on the anticipated success of her Equal Pay Act claim: "As discussed above under the stricter EPA standard, Mayden has established that she was similarly situated to Burchett and Samelson, but paid less." Ms. Mayden must identify "with reasonable particularity the evidence that precludes summary judgment" on her Title VII claim, but she hasn't done so. Brasic v. Heinemann's, Inc., 121 F.3d 281, 285 (7th Cir. 1997); *see also* Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005); Ammons v. Aramark Uniform Servs., Inc., 368 F.3d 809, 817-818 (7th Cir. 2004). Ms. Mayden hasn't presented argument or evidence to rebut the comparisons of her experience and

education with Mr. Burchett's experience and education. The unrebutted evidence is that while Mr. Burchett was treated more favorably in pay than Ms. Mayden, he was not a comparably situated co-employee. Superior is entitled to judgment as a matter of law on Ms. Mayden's Title VII disparate treatment claim based on the disparity of her pay and Mr. Burchett's pay.

*B. Mr. Samelson*

Ms. Mayden's Title VII claim concerning Mr. Samelson fails for the same reason her Burchett-based Title VII claim failed. Mr. Samelson is not comparably situated. Mr. Samelson, like Mr. Burchett, had many more years of dispatching experience than Ms. Mayden (thirteen compared to Ms. Mayden's two in January 2001), had experience dispatching in Illinois (with more ambulances and stations) that Ms. Mayden didn't have, and had a college degree and an Emergency Medical Dispatcher licenses (neither of which Ms. Mayden had). For the same reason Superior is entitled to summary judgment on the Title VII disparate treatment claim based on Mr. Burchett's pay, it is entitled to judgment on the Title VII disparate treatment claim based on Mr. Samelson's pay, as well.

Ms. Mayden also claims in her response that she can "recover under the disparate impact theory by proving that an employment practice that is facially neutral in its treatment of similarly situated employees has a disproportionately adverse effect on those employees who are a member of a protected class." Resp., at 23. To prevail on a disparate impact claim, Ms. Mayden must "isolate and

12

identify the specific employment practices that are allegedly responsible for any observed statistical disparities" and must offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused [the discrimination complained of] because of [] membership in the protected group." Farrell v. Butler Univ., 421 F.3d 609, 616 (7th Cir. 2005). Ms. Mayden hasn't set forth any statistical evidence, and her lone allegation as to this issue relates only to the effect the practice had on her, not on the protected class: "[Superior's] practice of transferring employees from large to smaller metropolitan areas without a change in pay, and using the same raise point scale for all dispatch employees, even those transferred, as it was applied, caused a discriminatory effect on Mayden because the raise point scale did not account for Mayden's lower starting pay in 2001, her superior knowledge and job performance, and her applicable experience dispatching medical vehicles in northwest Indiana." Resp., at 23.

Ms. Mayden didn't advance a disparate impact (or disparate treatment) claim relating to Superior's transfer policy in her EEOC complaint or in the complaint she filed in this court. Ms. Mayden's only mention of a claim relating to a transfer issue is in her response brief, and she may not amend her complaint through her summary judgment response. Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002); *cf.* Wernsing v. Department of Human Servs., State of IL, 427 F.3d 466, 469 (7th Cir. 2005) ("[T]he Equal Pay Act deals exclusively with disparate treatment. It does not have a disparate-impact component."). Ms. Mayden has

13

waived any claim for recovery based on a disparate impact theory relating to Superior's transfer policies.

Ms. Mayden fares better under the Equal Pay Act insofar as her claim is based on Mr. Samelson's pay. At least on the surface, she and Mr. Samelson do equal work that requires equal skill, effort, and responsibility under similar working conditions. They both dispatch wheelchair vans. Superior assigned Ms. Mayden other duties, too: she acted as the company's community relations liaison, a position that required her to perform numerous tasks for the company in addition to her dispatching tasks, including setting up health fairs, giving speeches during EMT week and to groups visiting the dispatch center, working 200 hours in 2003 with the Town of Highland to help procure defibrillators and first aid kits for their police cars, decorating and painting the company facility, helping to hire EMTs, filling in as an EMT for Superior, working as a stand-by EMT at sporting events, and assisting in the negotiation of Superior's contracts with various cities. Superior provided Ms. Mayden with a community relations business card and a company cell phone in aid of her community work. In 2005, Superior dispatched Ms. Mayden to the southern United States to work as an EMT assisting in Hurricane Katrina disaster relief, work for which she received extra compensation from Superior.

Superior says that even though Mr. Samelson replaced Ms. Mayden following her resignation, Mr. Samelson worked as a full-time dispatcher. He spent no part of his working time as the company's community relations liaison,

performing any of the community related tasks Ms. Mayden had performed, or working as an EMT for the company. Superior concludes that the jobs performed by Ms. Mayden and Mr. Samelson didn't involve a common core of tasks.

Ms. Mayden responds first that because Mr. Samelson replaced her, "there can be little doubt their jobs were equal." Resp., at 17. Ms. Mayden says the time she spent on "extra" responsibilities for Superior was negligible – 2% of her time on EMT calls and 2% of her time on community relations and special projects – and because the law doesn't allow "piling [on] extra duties to constitute unequal responsibilities," Resp., at 19, a jury must decide whether the positions she and Mr. Samelson held were unequal.

While working on community relations and as an EMT, Ms. Mayden wasn't dispatching anything. Ms. Mayden must show "that the jobs compared are substantially equal, based upon actual job performance and content." Markel v. Board of Regents of Univ. of Wisconsin, 276 F.3d 906, 913 (7th Cir. 2002). These differences might lead a jury to find against her. On the other hand, if her testimony is believed, she spent only about two hours a week or less on those non-dispatching tasks, so a jury might find that her job still was substantially equal to Mr. Samelson's job.

Superior says that even if Ms. Mayden established a prima facie case under the Equal Pay Act, she still couldn't prevail because the company's pay policy was based on factors other than sex. Superior says Mr. Samelson was paid more than Ms. Mayden because he had more experience and education than Ms. Mayden.

Ms. Mayden began working as an EMT and dispatcher for Superior in 2001; before then, Ms. Mayden had worked for four years as an EMT and for two years as a dispatcher at Co-Med[3]; Ms. Mayden is a licensed EMT. Mr. Samelson, in contrast, began working as a dispatcher for Superior in 2001; before then, he worked for six years as a 911 dispatcher at Co-Med. Mr. Samelson holds a paramedic certificate and in 2001 had twenty years experience working as a paramedic. Mr. Samelson transferred from Superior's Illinois facility to its Indiana facility in 2006. Mr. Samelson is a licensed EMT, has a bachelor's degree, and is a certified Emergency Medical Dispatcher.

"Under the EPA, differences in education and experience may be considered factors other than sex." Merillat v. Metal Spinners, Inc., 470 F.3d 685, 697 (7th Cir. 2006). In addition, "[e]mployers may prefer and reward experience, believing it makes a more valuable employee, for whatever reason." Soto v. Adams Elevator Equipment Co., 941 F.2d 543, 548 (7th Cir. 1991). "Even if a man and woman are doing the same work for different pay, there is no violation if the wage difference stems from a factor other than gender." Wollenburg v. Comtech Mfg. Co., 201 F.3d 973, 976 (7th Cir. 2000). Superior has set forth a bona fide, gender-neutral rationale for the pay discrepancies at issue and says that that rationale is used by the company to establish rates of pay for its employees. Courts can't impose

---

[3] Superior says that even though Ms. Mayden now claims she had two years dispatching experience with Co-Med, on the Pre-Employment Application she submitted to Superior in December 2000, Ms. Mayden indicated she had "skill, training or experience" as an EMT and as an ambulance crew scheduler, but didn't check the box or indicate that she had any dispatching experience. *See* Deft. Exh. F.

on employers their own ideas of what constitutes a prudent business decision; they "can assess only the question [of] whether an employer has taken an action for a forbidden reason." Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 2000).

Superior might well persuade a jury that education and experience are the reasons Mr. Samelson is paid more than Ms. Mayden for doing what might be found to be the same job under similar conditions. To prevail on this affirmative defense at the summary judgment stage, though, Superior must point to a record that would compel any reasonable juror, even one drawing all reasonable inferences in Ms. Mayden's favor, to find that the pay differential stems from education and experience. This record lacks such power. No Superior official with pay-setting authority testified that Mr. Samelson's superior experience and education are why his pay is greater than Ms. Mayden's.

Superior is not entitled to summary judgment on Ms. Mayden's Equal Pay Act claim relating to Mr. Samelson.

IV. THE JOINT MOTION TO RESET PRETRIAL HEARING

At the summary judgment hearing, the court confidently said it would rule quickly, so the parties would have more than enough time to prepare for the final pretrial conference and trial. The court's bold prediction fizzled, and the parties jointly requested a 28-day continuance of the final pretrial conference. Such a continuance would back the pretrial conference too close to the trial date for

17

comfort. So while the court agrees that the parties need relief from deadlines that are now too close, the parties' requested method won't work. Instead, the court will vacate the final pretrial conference and the trial, to be reset at a telephonic pretrial conference that will be scheduled in a separate order.

## V. CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART the summary judgment motion [docket # 24] of Superior Ambulance Service, Inc. The motion is granted as to all claims other than the plaintiff's Equal Pay Act claim based on Mr. Samelson's pay. The court also GRANTS IN PART the joint motion to reset the pretrial conference and deadlines [docket #35] and VACATES the final pretrial conference date of July 28, 2009 and jury trial date of August 18, 2009, to be reset at a telephonic conference scheduled in a separate order.

SO ORDERED.

ENTERED:     July 10, 2009

                     /s/ Robert L. Miller, Jr.
                     Chief Judge
                     United States District Court